IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

RUBY SCOTT                                                            PLAINTIFF

vs.                                    NO: 2:08CV00020 BSM

HELENA REGIONAL MEDICAL CENTER                                       DEFENDANT

## ORDER

Plaintiff, Ruby Scott (Scott), brings this action against her former employer, Helena

Regional Medical Center (HRMC),  pursuant to 42 U.S.C. §§ 1981 and 2000e *et seq*., alleging

that she was wrongfully terminated based on her race.  HRMC has filed a motion for summary

judgment [Doc. No. 9] to which Scott has responded and HRMC has replied.

## I.  BACKGROUND

Scott, who is black, began working as a nurse at HRMC in 1992.  Defendant's  Stmt.

of Facts ¶ 1 (Doc. No. 11).  At the time of her termination on December 6, 2006,  Scott was

the nursing director over the women's and children's pavilion at HRMC.  *Id*.  HRMC alleges

that it terminated Scott after she reviewed an employee's medical records without

authorization in violation of the Health Insurance Portability and Accountability Act

(HIPAA).  *Id*.

Scott supervised Kelly Raney (Raney), a nurse who worked in the women's unit.  On

Sunday, November 26, 2006, Raney sought treatment for an undisclosed illness in the

emergency room (ER).   Raney was scheduled to work on Monday, November 27 and

Tuesday, November 28, 2006.  On Sunday, Raney called in sick in order to take off Monday

and Tuesday.  Raney was excused from work on Monday but not excused on Tuesday because HRMC's policy does not allow employees to call in sick two days ahead.  *Id.* ¶¶ 3-8.

When Raney did not show up for work on Tuesday, Scott discussed the situation with Juril Fonzie (Fonzie), HRMC's human resources director.  Fonzie told Scott to find out if Raney had a doctor's excuse.  *Id.* ¶¶ 9-10.  Scott went to the ER and asked Dr. Istanbul, Raney's treating ER physician, if he had given Raney a doctor's excuse.  Istanbul reported that he had not.  *Id.* ¶¶ 11, 13.

Shanna Pryor (Pryor) informed Scott that ER physicians do not write doctor's excuses for employees of HRMC.  *Id.* ¶ 14.  Scott, however, claims that she decided to review Raney's chart to determine whether Dr. Istanbul had written something on the chart to justify Raney's absence.  Plaintiff's Depo. p. 43; Plaintiff's Affidavit ¶ 4.

On Tuesday, November 28, 2006, Penny Davis (Davis), Director of Health Information Management, overheard Scott on the telephone discussing Raney's medical records.  Davis submitted a memo dated November 28, reporting a HIPAA violation.  Defendant's Ex. 3.

HRMC's Human Resources Polices and Procedures Managers Manual (HRMC Policies), Section 7.0 provides:

> It is not possible to list all acts or misconduct that may result in disciplinary action.  The following list is merely a guideline of some of the more obvious types of actions or misconduct which may result in immediate termination or disciplinary action:
> Violation of patient confidentiality or disclosure of confidential employee records.

Defendant's Ex. 4.

After receiving notice of Scott's action, Tom Kinnebrew, HRMC's Chief Executive Officer, met with Scott on December 6, 2006.  Kinnebrew, who is white, terminated Scott for violating HIPAA and Scott filed a grievance on December 15, 2006 claiming the termination was racially discriminatory.  Defendant's Ex. 5, Plaintiff's Ex. 3. On December 18, 2006, Kinnebrew determined that termination was justified.  Plaintiff's Ex. 10.

Scott filed a charge with the Equal Employment Opportunity Commission (EEOC) on January 26, 2007 alleging that she was discharged because of her race.  She received notice of right to sue and subsequently filed this action on February 13, 2008.

## II.  SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "The burden of demonstrating that there are no genuine issues of material fact rests on the moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004). To be a genuine issue of fact, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1094 (8th Cir. 2007).  To be a material fact, the factual issue must potentially affect the outcome of the suit under governing law.  *Id.*

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party, giving her the benefit of all reasonable inferences drawn from the record. *Hannoon v. Fawn Eng'g Corp.*, 324 F.3d 1041, 1045-46 (8th Cir. 2003). Once the moving party has demonstrated that there are no genuine issues of material fact in dispute, the non-moving party must present evidence showing that there are "disputed material facts [and] that a reasonable jury could return a verdict in [its] favor." *Gregory v. City of Rogers, Ark.*, 974 F.2d 1006, 1010 (8th Cir.1992). The non-movant must present evidence that is more than "merely colorable" or not significantly probative. *Id.* It may not rest on mere denials or allegations but must set forth specific facts to raise a genuine issue of fact for trial. *Wingate v. Gage County Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

The Eighth Circuit has stated that "[s]ummary judgment should seldom be granted in the context of employment discrimination cases because of their being inherently fact based." *Buboltz v. Residential Advantages, Inc.,* 523 F.3d 864, 871 (8th Cir. 2008). It has, however, also noted that there is no "discrimination case exception" to the application of Rule 56. *Pope v. ESA Servs.*, 406 F.3d 1001, 1006 (8th Cir. 2005).

### III. DISCUSSION

At the summary judgment stage, the issue in a discrimination case is "whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action." *Roberts v. Park Nicollet Health Services*, 528 F.3d

1123, 1127 (8th Cir. 2008) (internal quotation marks and citation omitted).  A plaintiff raising a claim of discrimination may survive a motion for summary judgment either by proof of direct evidence of discrimination or by creating an inference of discrimination under the burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) and then rebutting any proffered nondiscriminatory reason for the employment decision with sufficient evidence of pretext.  *King v. Hardesty*, 517 F.3d 1049, 1057 (8th Cir. 2008).

As Scott has presented no direct evidence of discrimination, the court applies the *McDonnell Douglas* framework. "Under the *McDonnell Douglas* framework, a presumption of discrimination is created when the plaintiff meets [her] burden of establishing a prima facie case of discrimination." *Pope*, 406 F. 3d at 1006.  Once Scott establishes her prima facie case, the burden of production shifts to the HRMC to show it had a legitimate, nondiscriminatory reason for its action.  If the HRMC can articulate a legitimate, nondiscriminatory reason, the burden returns to Scott to prove that the proffered reason is pretextual.  *Beaden v. Int'l Paper Co.*, 529 F.3d 828, 831-32 (8th Cir. 2008).  While "the burden-shifting framework is merely an analytical construct; the ultimate burden of proving discrimination remains at all times with [plaintiff]." *Montes v. Greater Twin Cities Youth Symphonies*, 540 F.3d 852, 858 (8th Cir. 2008) (internal quotation marks and citations omitted).

To establish a prima facie case of discrimination, Scott bears the burden of proving that (1) she is a member of a protected class; (3) that she was meeting the expectations of her

employer; (3) that she suffered an adverse employment action; and (4) that similarly situated employees outside her protected class were not treated the same as she was, *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008), or the circumstances surrounding the adverse action give rise to an inference of unlawful discrimination. *Arnold v. Nursing and Rehab. Ctr. at Good Shepherd, LLC*, 471 F.3d 843, 846 (8th Cir. 2006).

HRMC concedes that Scott has established the first three elements of her prima facie case, but asserts that Scott cannot show that she was discharged under circumstances giving rise to an inference of unlawful discrimination. "The burden of establishing a prima facie case of disparate treatment is not onerous." *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 852 (8th Cir. 2005) (quoting *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). As discussed more fully below, Scott contends that she was replaced by a white employee, that she was treated less favorably than a similarly situated white employee, and that HRMC deviated from its normal personnel policies when she was terminated. The court finds that Scott has established a prima facie case of discrimination.

HRMC has articulated a legitimate reason for Scott's termination, that is, Scott's unauthorized review of an employee's medical records violated HIPAA and its policies. The burden is placed on Scott to demonstrate that HRMC's articulated reason is pretextual. Pretext may be proven by "demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before he was terminated, that similarly situated employees who did not engage in the protected activity were treated more

leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies." *Stallings v. Hussmann Corp.*, 447 F.3d1041, 1052 (8th Cir. 2006).

In support of her argument that HRMC's decision was pretextual, Scott states that she was treated differently than a similarly situated white employee. She points to Pat Fuller, a white Director of Nursing, who admitted during a managers' meeting that she had looked at an employee's chart but was not disciplined. Plaintiff's Depo. pp. 50-53. While HRMC asserts that Kinnebrew was unaware of Fuller's action, there is nothing in the record supporting this position. Scott contends that reviewing employee medical records was tolerated by the HRMC, if not considered an accepted practice, as shown by the fact that Fuller, a white employee, told a group of people, including a number of managers, that she had done the same and that no disciplinary action was taken against her.

Furthermore, there is a question as to whether there was a factual basis for Scott's termination. The evidence reveals that Scott released the information about Raney to Fonzie, HRMC's human resources director. A reasonable jury could find that Scott's action did not violate HIPAA or HRMC's policies. *See Maier v. Green*, 485 F. Supp. 2d 711, 721 n. 3 (W. D. La. 2007) ("HIPAA prohibits hospital personnel from disclosing protected health care information to third parties.")

Scott also points to HRMC's deviation from its normal termination policy as evidence of pretext. According to Fonzie, a manager recommending termination of one of her

-7-

employees usually discusses the termination with Fonzie prior to termination. Fonzie Depo. p. 26  Upon being notified of the termination recommendation, Fonzie would then request documentation supporting the termination. *Id.*  Fonzie states that she would normally consult with her regional HR about any terminations prior to them becoming final. *Id.* at 27.  In the present case, Scott's supervisor, Director of Nursing Patricia Gardner, did not recommend termination to Fonzie and Fonzie never discussed the termination recommendation with Kinnebrew.  Id. at 26-27.  Additionally, an investigation is normally conducted before an employee is terminated, but no investigation was performed in Scott's case. *Id.*  at 30.

In addition to the factors set forth above, there is other evidence of disparate disciplinary action.  Gardner, who is white,  had problems with her license, in which she was alleged to have given false information to the state medical board having.  Fonzie and Kinnebrew met and investigated the matter.  Gardener, however, was not terminated by Kinnebrew, but was allowed to resign.  Fonzie depo. pp. 51-56.  This enabled Gardner to find employment elsewhere as a nurse.  *Id.*

In the present case, Kinnebrew did not involve Fonzie in the termination of Scott and did not conduct an investigation.  He simply fired her, thereby making Scott ineligible for re-employment as a nurse.  Indeed, with regard to the discipline Scott received,  Fonzie, who had been employed as the HR director at HRMC for some time and was familiar with disciplinary actions taken against employees, opined that Scott should have been disciplined, but not terminated.  Fonzie Depo. p 49    Additionally, that Scott was replaced by a white employee

is probative of pretext.

The court finds that Scott has presented sufficient evidence for a jury to find that infer discrimination. *McNary v. Schreiber Foods, Inc.*, 535 F.3d 765, 769 (8th Cir. 2008) (to establish pretext, plaintiff must offer sufficient evidence for reasonable trier of fact to infer discrimination).

## IV. CONCLUSION

Accordingly, HRMC's motion for summary judgment [Doc. No. 9] is denied.  As the court did not rely on affidavit of Marvline Smith which Scott seeks to offer in support of her response, the motion to supplement [Doc. No. 31] is denied.

IT IS SO ORDERED this 1st day of April, 2009.



UNITED STATES DISTRICT JUDGE